ATTORNEY FOR APPELLANT
Timothy J. Hambidge
Evansville, Indiana

ATTORNEY FOR APPELLEE
John P. Brinson
Evansville, Indiana

# In the
# Indiana Supreme Court

No. 82S01-0706-CV-254

TINA N. GRANT,

*Appellant (Respondent below),*

v.

GREGORY M. HAGER,

*Appellee (Petitioner below).*

Appeal from the Vanderburgh Superior Court, No. 82D04-0212-DR-01310
The Honorable Wayne S. Trockman, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 82A01-0511-CV-490

**June 27, 2007**

**Sullivan, Justice.**

Under the circumstances of this case, the trial court ordered a custodial parent to make child support payments to the non-custodial parent based on the court's reading of the Indiana Child Support Guidelines. We hold that there is a rebuttable presumption that a custodial parent is not required to make child support payments under these circumstances but that a trial court has authority to deviate from that presumption in accordance with the Indiana Child Support Rules and Guidelines.

## Background

The marriage of Tina Grant and Gregory Hager was dissolved in April 2003. They were granted joint legal custody of their two children, with Grant receiving primary physical custody. Hager was ordered to pay $108[1] per week in child support, consistent with the Indiana Child Support Guidelines promulgated by this Court for use by Indiana judges in making child-support determinations.

In April 2005, Hager filed a petition to modify child support. At a hearing on his petition, Hager submitted a Child Support Obligation Worksheet prepared in accordance with the Guidelines. The worksheet was based on Grant's annual earnings of $105,724 and Hager's annual earnings of $55,935. These figures showed combined total weekly adjusted income of $3,109, with Grant earning 65.4% and Hager earning 34.6% of that amount. The calculations set forth in the Guidelines produced a total weekly child support obligation for both parents of $517.00. Based on their relative incomes under the Guidelines before any credits, Grant would be responsible for $338 (65.4%) and Hager would be responsible for $179 (34.6%).

Under the Guidelines, a Parenting Time Credit is authorized based upon the number of overnights a child or children spend with the non-custodial parent. Ind. Child Support Guideline 6 cmt. After the dissolution here, the children had spent approximately 156 overnights per year with Hager, which gave him 43% of the parenting time. Hager also provided $55 per week in health insurance premiums attributable to the children. The trial court determined Hager's parenting time produced a Parenting Time Credit for Hager of $216. This amount, when added to Hager's $55 credit for health insurance premiums, produced a total credit of $271, which exceeded Hager's $179 share of the weekly support by $92.

The trial court recognized that Grant was the primary custodial parent but concluded that the Guidelines produced a "negative credit" and required modification of the support order. Ac-

---

[1] All numbers are rounded to the nearest dollar.

cordingly, the trial court entered a judgment modifying child support and ordered Grant, the custodial parent, to pay child support to Hager, the non-custodial parent, in the amount of $92 per week. The parties were also to share certain other child-related expenses for extra-curricular activities in the same proportion as their incomes.

Grant appealed. Although she did not contest the trial court's application of the Child Support Obligation Worksheet or calculation of Hager's Parenting Time Credit, Grant argued that because the worksheet after credits produced a negative child support obligation for Hager, the Court of Appeals should terminate child support altogether. Basically, Grant contended that the Guidelines cannot result in a custodial parent paying support to the non-custodial parent. The Court of Appeals agreed and reversed the trial court's award of child support payable to Hager and remanded with instructions to order that neither party owes the other support under their respective current incomes and their shared parenting time arrangement. Grant v. Hager, 853 N.E.2d 167, 174 (Ind. Ct. App. 2006). We grant transfer. Ind. Appellate Rule 58(A).

**Discussion**

The Court of Appeals concluded that the Guidelines do not permit the application of the Parenting Time Credit in a manner that requires a custodial parent to pay child support to a non-custodial parent. Grant, 853 N.E.2d at 174. Specifically, the Court of Appeals examined the Guidelines and their accompanying commentary and found that they supported this interpretation, including the repeated references to the payment of child support running from the non-custodial parent to the custodial parent, id. at 173; the fact that there are no references in the Guidelines or commentary involving support payments from the custodial parent to the non-custodial parent, id.; and the crediting language of Guideline 3(G)(4) (The "court may grant the noncustodial parent a credit toward his or her weekly child support obligation . . . based upon the calculation from a Parenting Time Credit Worksheet . . . ."), id. (citation omitted). The Court of Appeals was correct in its interpretation of the Guidelines in this regard.

3

We also agree with the following observation made by the Court of Appeals as to the policies implicated by this question:

> There are advantages and disadvantages to allowing child support payments to run from a custodial to a noncustodial parent. On the one hand, to do so encourages a noncustodial parent to participate more in his or her children's lives following divorce, and it results in more similar living environments for children when they go from one parent's home to the other's. On the other hand, it also has the potential to increase custody disputes by providing an incentive for a custodial parent to fight shared parenting time, and it takes money from the custodial parent, thereby reducing the likelihood that he or she will be able to provide a home more similar to that which the children would have enjoyed had the marriage remained intact. Where a matter is scheduled for regular review, however, these and other concerns are best addressed by the judicial committees charged with that review rather than by this Court.

Id. at 175.

Although we agree with the Court of Appeals that the Guidelines do not authorize "the payment of child support from a custodial to a noncustodial parent," id. at 174, that does not automatically render the trial court's resolution of this matter invalid. Ind. Child Support Rule 2 provides that:

> In any proceeding for the award of child support, there shall be a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded.

As such, there is a rebuttable presumption that neither party owes the other support under their respective current incomes and their shared parenting time arrangement. However, Child. Supp. R. 3 provides:

4

> If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion.

Given this deviation authority, a court could order a custodial parent to pay child support to a non-custodial parent based on their respective incomes and parenting time arrangements if the court had concluded that it would be unjust not to do so and the court had made the written finding mandated by Child. Supp. R. 3. The dissolution court's conclusion here may very well be supportable on this basis but the court did not make the required findings here, apparently believing instead that the Guidelines themselves authorized it to order Grant to pay child support to Hager. We remand this matter to the dissolution court for reconsideration in accordance with the principles enunciated in this decision.

## Conclusion

The judgment of the trial court is reversed. This case is remanded to the trial court for further consideration.

Shepard, C.J., and Rucker, J., concur. Boehm, J., dissents with a separate opinion in which Dickson, J., concurs.

5

**Boehm, Justice, dissenting.**

I believe the trial court properly applied the Guidelines and therefore respectfully dissent. An important purpose of the Indiana Child Support Guidelines is to ensure that children "receive the same proportion of parental income after a dissolution that they would have received if the family had remained intact." Ind. Child Support Guideline 1 cmt. 1; see also Tebbe v. Tebbe, 815 N.E.2d 180, 183-84 (Ind. Ct. App. 2004). The guidelines were based on the Income Shares Model, which "apportions the cost of children between the parents based on their means." Child Supp. G. 1 cmt. 1.

To calculate this apportionment of child support between the parents, the Guidelines supply a Child Support Obligation Worksheet, which is required to be completed in all proceedings establishing or modifying child support. Child Supp. G. 6 (Child Support Obligation Worksheet). Each parent's support obligation is based on various figures, including his or her percentage of the pair's combined total weekly gross income, and each is subject to adjustments to reflect expenses incurred by a noncustodial parent for the child's support. Id.

Among these adjustments is the Parenting Time Credit for a noncustodial parent, which applies if a child spends fifty-two (52) or more overnights annually with the noncustodial parent. Child Supp. G. 6 cmt. 1. If that threshold is met, the credit increases in proportion to the parenting time. Id. The Parenting Time Credit is intended to address the reality that additional expenses are incurred when two households are maintained for the children. Child Supp. G. 6 cmt. 1. Both households usually provide housing, utilities, household furnishings, toys, and play and study space. Marygold S. Melli & Patricia R. Brown, The Economics of Shared Custody: Developing an Equitable Formula for Dual Residence, 31 Hous. L. Rev. 543, 554 (1994). These costs are not materially reduced for the custodial parent when the child spends time with the noncustodial parent, so the noncustodial parent's costs to a large extent duplicate those incurred by the custodial parent. Id. These additional costs of maintaining two households are often the greatest factor in the increased expense attributable to the children when the parents share parenting time after a dissolution. Id. The Child Support Guidelines dictate that "[b]oth parents should share in these additional costs." Child Supp. G. 6 cmt. 1.

The initial allocation of support is designed to impose on the noncustodial parent a share of support expenses in proportion to his or her share of the total income of the two parents. Without the Parenting Time Credit, the noncustodial parent would first pay for his or her share of the support and then also pay for his or her own expenses related to the child. The result would be imposition of a disproportionate share of the child's total expenses on the noncustodial parent. The Worksheet usually produces a credit smaller than the noncustodial parent's share of the total support. In this case, however, because Grant's income is nearly twice Hager's and Hager has almost one half of the parenting time, the credit exceeds Hager's share of support and produces a negative child support obligation.

The commentary to Guideline 6 requires that a custodial parent share in the additional duplicated costs arising from shared parenting arrangements. Child Supp. G. 6 cmt. 1. I do not agree that the Guidelines categorically prohibit payments to a noncustodial parent. Rather, I think the language of the relevant statutes and the Indiana Child Support Guidelines and Rules support the conclusion that a trial court should order support as calculated by the Guidelines, even to a noncustodial parent, unless it finds the amount unjust or inappropriate.

The Federal Family Support Act requires each state to implement guidelines for child support award amounts. 42 U.S.C. § 667(a). The Act also requires states to establish a rebuttable presumption that child support awards resulting from the application of these guidelines are correct. A finding that the application of the guidelines is unjust or inappropriate can rebut this presumption. 42 U.S.C. § 667(b)(2). Tracking this language from the federal statute, Indiana Child Support Rules 2 and 3 provide as follows:

> Support Rule 2. Presumption
>
> In any proceeding for the award of child support, there shall be a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded.
>
> Support Rule 3. Deviation from Guideline Amount
>
> If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion.

2

As both the majority and the Court of Appeals observe, the Child Support Guidelines, as written, do not describe a situation where a custodial parent pays child support to a noncustodial parent. But the Guidelines contain an important caveat in the commentary to Guideline 1: "[N]o attempt has been made to define every possible situation that could conceivably arise when determining child support and to prescribe a specific method of handling each of them." I agree that if the Guidelines produce a "negative credit," the Guidelines make no reference to the trial court's ordering support to be paid by the custodial parent. I also agree that some provisions of the Child Support Guidelines suggest that the Guidelines do not assume payment of child support by the custodial parent to the noncustodial parent. I think, however, for the reasons explained above, that the Rules, the Guidelines, and the relevant sections of federal and Indiana statutes all support the conclusion that a trial court is to order support as calculated under the Guidelines— even if the Guidelines result in payment of support to a noncustodial parent—unless it finds the amount "unjust" or "inappropriate."

I think the trial court's order is also consistent with the objectives of the Guidelines. The Guidelines recognize the importance of shared parenting time: "it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent." Preamble to Indiana Parenting Time Guidelines. The trial court may determine that physical custody is appropriately given to the parent with significantly greater resources and earning capacity. The Parenting Time Credit encourages shared parenting by addressing the financial burden of duplicated expenses on the noncustodial parent. Disparity of income between the custodial and noncustodial parent coupled with increased shared parenting time may produce a Parenting Time Credit that exceeds a noncustodial parent's child support obligation. If so, it is appropriate for the trial court to order the financially advantaged custodial parent to make child support payments to the less advantaged noncustodial parent. If that is not done, either the noncustodial parent bears a disproportionate share of the cost of maintaining the child or the resources devoted to the child suffer. Neither is a desirable result. These considerations may be outweighed by others, but unless and until the Guidelines are adjusted to strike a different balance, a "negative credit" is called for under circumstances such as these. I would affirm the trial court's order.


Dickson, J., concurs.